# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ALISON D'ANGELO,

    Plaintiff,

v.

WELLSTAR MEDICAL GROUP,
LLC and PAULINE BRIDGEMAN,
in her individual capacity,

    Defendants.

CIVIL ACTION FILE

NO. 1:18-CV-3873-MHC-JKL

## ORDER

This matter is before the Court on the Non-Final Report and Recommendation ("R&R") of Magistrate Judge John K. Larkins III [Doc. 24] recommending that Defendant WellStar Medical Group, LLC ("WellStar")'s Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. 19] be granted in part and denied in part, and Defendant Pauline Bridgeman ("Bridgeman")'s Motion to Dismiss Plaintiff's Amended Complaint [Doc. 18] be granted. The Order for Service of the R&R [Doc. 25] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Within that time period, WellStar filed its

objections to the R&R [Doc. 27] ("WellStar's Objs.") and Plaintiff Alison D'Angelo ("D'Angelo") filed her objections to the R&R [Doc. 26] ("D'Angelo's Objs.").

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and need only satisfy itself that there is no plain error on the face of the record in order to accept the recommendation. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983). Further, "the district court has broad discretion in reviewing a magistrate judge's report and recommendation"—it "does not abuse its discretion by considering an argument that was not presented to the magistrate judge" and "has discretion to decline to consider a party's argument when that argument was

not first presented to the magistrate judge." Williams v. McNeil, 557 F.3d 1287, 1290-92 (11th Cir. 2009). In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Plaintiff objects and has reviewed the remainder of the R&R for plain error. See Slay, 714 F.2d at 1095.

**I.    WELLSTAR'S OBJECTION**

D'Angelo alleges that she worked for WellStar as a Registered Medical Assistant at the East Cobb Medical Center in Marietta, Georgia and was forced to resign. Am. Compl. [Doc. 17] ¶ 12. She asserts the following claims against WellStar: (1) Race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981 (Count I); (2) Age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA") (Count II); and (3) State law claims for negligent retention and supervision (Count III), breach of contract (Count IV), and intentional infliction of emotional distress (Count V). Am. Compl. ¶¶ 48-78. In its Partial Motion to Dismiss, WellStar seeks dismissal of Counts I-III and V. WellStar's Partial Mot. to Dismiss at 4-14.

In his R&R, Judge Larkins recommends denial of WellStar's motion with respect to the claims in Counts I and II, finding that "D'Angelo has made a

3

plausible showing that she was forced to resign and that her forced resignation was the product of a race- or age-based discriminatory motive." R&R at 16. Judge Larkins recommends that WellStar's motion be granted as to the intentional infliction of emotional distress claim in Count V because "D'Angelo has failed to show that [WellStar] engaged in conduct that was extreme and outrageous as a matter of law," and as to the derivative claim for negligent hiring and retention in Count III. Id. at 22.

In its sole objection, WellStar contends that Judge Larkins erred by concluding that D'Angelo adequately pled that she suffered an adverse employment action when presented with a "resign or be fired" ultimatum on April 10, 2018, because she submitted a resignation "notice" one day earlier and that prevents her from showing that she suffered an adverse action. WellStar's Objs. at 2-5. However, the facts as alleged in D'Angelo's Amended Complaint, which the Court must accept a true for purposes of WellStar's motion to dismiss, indicate otherwise:

- On Friday, April 6, 2018, D'Angelo, a 42-year-old Caucasian female, was informed by Bridgeman, an African American manager of East Cobb Medical Center who reported to Christi Carmichael, the African American Director of Physician Operations (both of whom had the

4

authority to fire D'Angelo), that Carmichael had received a formal complaint from an African American employee named Takesha accusing D'Angelo of making physical contact with and threatening her. Am. Compl. ¶¶ 12, 14-15, 25.

- On Monday, April 9, 2018, at 4:30 p.m., D'Angelo was told to report to the corporate office by 9:00 a.m. the next day. Id. ¶ 28.

- Based upon her thirteen year tenure at WellStar, D'Angelo was aware that WellStar's practice prior to terminating employees was to require them to report to the corporate office. Id. ¶ 29.

- On Monday, April 9, 2018, at 5:30 p.m., D'Angelo left a letter at Bridgeman's office which stated her intent to resign two weeks from that date. Id. ¶ 30.

- On Tuesday, April 10, 2018, D'Angelo met with Carmichael and another WellStar representative and was told that WellStar was leaning toward terminating D'Angelo but that, if she resigned that day, she could get two weeks of pay. Id. ¶ 34.

- D'Angelo tried to explain the incident with Takesha, the complainant, but Carmichael and the other WellStar representative disagreed with

- D'Angelo's explanation because other African American witnesses backed Takesha's story. Id. ¶ 35.
- D'Angelo was then given a choice to "go with [her] two weeks' notice and be terminated that same day or resign that day with two weeks' pay. Id. ¶ 37.
- D'Angelo resigned but did not receive the two weeks' pay. Id. ¶ 38.
- One day after her resignation, D'Angelo was replaced by a younger, less qualified African American individual. Id. ¶ 41.

Contrary to WellStar's objection, the allegations in the Amended Complaint do not constitute an admission that D'Angelo voluntarily resigned her position the day before she was given the "resign or be fired" ultimatum. The day before the meeting with Carmichael and another WellStar representative, D'Angelo presented a letter which stated her intent to resign on April 23, 2018, two weeks later. According to the allegations of the Amended Complaint, the next day she was informed by WellStar that she had two choices: resign that same day and get two weeks' pay or, if she chose to wait two additional weeks before resigning, she would be fired that day.

Whether D'Angelo actually was discharged on April 10, 2018, is an issue of fact that remains to be litigated. "Whether an actual termination has occurred is

6

determined in light of the particular circumstances of the controverted job action." Luna v. Walgreen Co., 347 F. App'x 469, 473 (11th Cir. 2009) (quoting Thomas v. Dillard Dep't Stores, Inc., 116 F.3d 1432, 1434 (11th Cir. 1997) (internal quotation marks and citation omitted) ("An actual discharge . . . occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated."). The termination inquiry hinges on the employer's intent. Id. "While the words used by the employer and the label for the job action are relevant for determining whether a termination has occurred, . . . the lack of specific words is not dispositive." Id. at 1437 (citations omitted).

WellStar's reliance on Brogdon v. Univ. of Del., No. 13-1600-GMS, 2015 WL167686 (D. Del. Jan. 13, 2015), is misplaced. Aside from being an unpublished opinion not binding on this Court, Brogdon involved a plaintiff who was informed her position would be terminated due to lack of funds, had her employment extended two months, and resigned from her position the day before she was purportedly terminated. Id. at *1-2, 4. In this case, D'Angelo asserts that she submitted a letter indicating an intent to resign after two weeks and the very next day was told she could either resign immediately and receive two weeks' pay or she would be fired.

It is possible that the evidence in this case will establish that D'Angelo resigned and was not terminated from her position at WellStar. It is also possible that the evidence will show that her planned future resignation was thwarted by her forced immediate resignation by WellStar. At this stage of the litigation, the only facts the Court must accept are those contained in the Amended Complaint's allegations, and this Court agrees with Judge Larkins that they state a claim for race and age discrimination upon which relief can be granted. WellStar's objection is, therefore **OVERRULED**.

## II.     PLAINTIFF'S OBJECTION

D'Angelo contends that Judge Larkins erred by concluding that she failed to allege an affirmative link between Bridgeman's conduct and her forced resignation. Pl.'s Objs. at 6; see R&R at 16-19. D'Angelo states that she alleged facts demonstrating Bridgeman's personal involvement in the forced resignation because Bridgeman was her direct supervisor, Bridgeman had authority to terminate her, Bridgeman assigned D'Angelo to work with Takesha (knowing that Takesha was a "problem-maker"), and then Bridgeman refused to investigate whether Takesha's complaint was legitimate. Id. at 8-9. D'Angelo then infers that Bridgeman somehow "achieve[d]" the discriminatory employment action.

This Court agrees with Judge Larkins that D'Angelo's Amended Complaint fails to allege that Bridgeman was personally involved in any action that resulted in her forced resignation. There are no allegations that Bridgeman took any action after Takesha submitted her complaint to Carmichael, that Bridgeman informed anyone about D'Angelo's letter of resignation left in Bridgeman's office on April 9, 2018, that Bridgeman was present at the meeting with Carmichael and an unidentified WellStar representative when D'Angelo purportedly was given the ultimatum to resign or be fired, or that Bridgeman had any involvement in the decision to give D'Angelo that ultimatum. See Ayers v. Intown Suites Mgmt., Inc., No. 1:05-CV-1528-JOF, 2006 WL 783352, at *3 (N.D. Ga. Mar. 21, 2006) ("Plaintiff has failed to allege that Defendant Vickers was personally involved in actions leading to Plaintiff's claim that she was terminated for discriminatory reasons."). Although D'Angelo asserts that "it defies logic that Defendant Bridgeman, who was the manager of the Center, was not advised of the decision to terminate D'Angelo's employment," Pl.'s Objs. at 11, there are no allegations in the Amended Complaint which allege that such action actually took place. Consequently, D'Angelo's objection is **OVERRULED**.

Alternatively, D'Angelo seeks the opportunity to amend her Amended Complaint to allege facts sufficient to maintain her race discrimination claim

9

against Bridgeman. This Court will allow D'Angelo a period of time within which to file such a motion to amend.

### III. CONCLUSION

Accordingly, it is hereby **ORDERED** that WellStar's objections to the R&R [Doc. 27] and D'Angelo's objections to the R&R [Doc. 26] are **OVERRULED**.

After conducting a *de novo* review of those portions of the R&R to which the parties object and reviewing the remainder of the R&R for plain error, the Court **ADOPTS** the Non-Final R&R [Doc. 24] as the Opinion and Order of the Court, with the exception of the recommendation to grant Bridgeman's Motion to Dismiss, in order to provide D'Angelo with the opportunity to amend her complaint against Bridgeman, which recommendation will remain under advisement.

It is hereby **ORDERED** that Defendant WellStar Medical Group, LLC ("WellStar")'s Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. 19] is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** as to Counts III and V of the Amended Complaint, which are **DISMISSED WITH PREJUDICE**, but **DENIED** as to Counts I and II of the Amended Complaint.

It is further **ORDERED** that, within fourteen (14) days of the date of this Order, Plaintiff shall file a motion to amend her Amended Complaint to allege facts that would establish Defendant Bridgeman's personal involvement in D'Angelo's forced resignation. The Clerk is **DIRECTED** to submit this matter to the undersigned after the expiration of fourteen (14) days. In the event Defendant Bridgeman does not file her motion to amend the Amended Complaint within the permitted period of time, this Court will adopt the remainder of the R&R and dismiss Bridgeman as a defendant in this case. In the event D'Angelo does move to amend her complaint as ordered, this Court will deny Defendant Bridgeman's Motion to Dismiss without prejudice and refer the motion to amend to Judge Larkins for further review.

**IT IS SO ORDERED** this 28th day of May, 2019.

_____
MARK H. COHEN
United States District Judge